UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SHANNAH M. KURLAND
   *Plaintiff*

v.                  C.A. 1:23-cv-

CITY OF CRANSTON, by and through its
Finance Director, Thomas Zidelis, alias;
MICHAEL WINQUIST, alias, individually
and in his official capacity as Chief of Police;
RYAN SHORE, alias, individually
and in his official capacity as a police sergeant;
ROBERT MAIONE, alias, DAVID CRAGIN, alias,
SEAN SPARKS, alias, individually and in their
Official capacities as police officers
   *Defendants*

## COMPLAINT

**I. Introductory Statement**

This action is brought by the Plaintiff, Shannah M. Kurland, seeking relief including compensatory and punitive damages, and attorney fees for acts and/or omissions of several Defendant police officers employed by the City of Cranston, the City itself, and the chief of police relating to violations of Ms. Kurland's rights under the United States and Rhode Island Constitutions as well as at common law including claims of excessive force, false arrest, malicious prosecution, as well as the policy, practice or custom of the agency and/or the head of the agency that approved, ignored, acquiesced to, condoned, and/or created a deliberately indifferent culture to such constitutional violations.

**II. Parties**

1. Plaintiff Shannah M. Kurland is a resident of the City of Providence, County of Providence and State of Rhode Island.

2. Defendant City of Cranston ("City" or "Defendant City") is a duly authorized and organized municipality under the laws of the State of Rhode Island and is sued by and through its Finance Director.

3. Defendant Michael Winquist (Defendant "Winquist"), at all times material hereto, was employed by the City of Cranston as its Chief of Police. He is sued individually and in his official capacity as a Cranston police chief.

4. Defendant Robert Maione ("Defendant Maione"), at all times material hereto, was employed by the City of Cranston as a police officer. He is sued individually and in his official capacity as a Cranston police officer.

5. Defendant David Cragin ("Defendant Cragin"), at all times material hereto, was employed by the City of Cranston as a police officer. He is sued individually and in his official capacity as a Cranston police officer.

6. Defendant Sean Sparks ("Defendant Sparks"), at all times material hereto, was employed by the City of Cranston as a police officer. He is sued individually and in his official capacity as a Cranston police officer.

7. Defendant Ryan Shore ("Defendant Shore"), at all times material hereto, was employed by the City of Cranston as a police sergeant. He is sued individually and in his official capacity as a Cranston police sergeant.

### III.   Jurisdiction

8. This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1343, 1367, 2201 and 2202.

### IV.   Venue

9. Venue is proper in this Court since, on information and belief, all of the Defendants reside or may be found in the District of Rhode Island in compliance with the requirements set

forth in 28 U.S.C. §1391. Venue is also proper because a substantial part of the events or omissions giving rise to the claims occurred in the District of Rhode Island.

V. **Material Facts**

10. On October 21, 2020, Ms. Kurland was arrested by the Cranston Police and charged with disorderly conduct (R.I. Gen. Laws §11-45-1), resisting arrest (R.I. Gen. Laws §12-1-10) and two counts of simple assault and/or battery (R.I. Gen. Laws §11—5-3) after being pepper sprayed directly in the face by Cranston police officers while she was within the City of Providence during what was largely a peaceful protest. Ms. Kurland did not enter the City of Cranston during any point prior to her arrest on the night in question.

11. On that night, a group of seventy-five to one hundred protesters peacefully marched through the South Side of Providence, starting at Councilman Miguel Luna Park on Sackett Street and making its way to Elmwood Avenue, heading south toward Cranston

12. The protest was in response to the near death of then twenty-four (24) year-old Jhamal Gonsalves ("Mr. Gonsalves") on October 18, 2020 in a crash involving Providence police. Mr. Gonsalves suffered severe injuries, and remained in a coma for approximately two months.

13. The crash that injured Mr. Gonsalves happened at Elmwood Avenue and Bissel Street in Providence.

14. The protesters made their way to Elmwood Avenue and continued traveling south in the direction of Cranston.

15. A second group, consisting of young riders of dirt bikes, scooters, 4-wheelers and motorcycles, many of whom had been personal friends of the young rider who now lay in

the hospital in a coma, converged on Elmwood Avenue near Bissell Street in Providence, in the eventual path of the protesters.

16. The young riders had been gathering at the scene since late afternoon, in a sort of vigil for their injured friend, talking and occasionally revving their engines.

17. Providence police had monitored the protestors and the group of young riders throughout the evening and decided to avoid forming a large police contingent.

18. Separately, a contingent of Cranston police had been monitoring the youth on their bikes since they gathered, and soon formed a blockade on Elmwood Avenue at the intersection of Hathaway Street to prevent anyone from entering Cranston.

19. Defendants Maione, Cragin, Sparks and Shore were members of the blockade.

20. Hathaway Street is the boundary of the two municipalities. The north side of Hathaway Street is within the City of Providence. The south side of Hathaway Street is within the City of Cranston.

21. Ms. Kurland was present that night to support Providence youth by monitoring for civil rights Violations.

22. From approximately thirty minutes before the protesters arrived, Ms. Kurland had observed the scene and spoke with neighbors from the Providence side of the border concerned about the Cranston forces mustering on the border.

23. According to the written narrative of Defendant Shore, he requested Providence "send a marked unit to the location so that there would be a Providence unit for jurisdictional purposes in this area."

24. According to Defendant Shore, "one Providence PD unit responded and advised that they would not be assisting due to the circumstances and subsequently cleared the scene."

25. During this apparent border patrol exercise, one of the Providence neighbors asked a Cranston officer why they were posted there. The officer responded, "because Providence dropped the ball."

26. With the Cranston Police blockade preventing further movement south, at some point between approximately 9pm and 10pm, a bottleneck formed when the protesters marching south on Elmwood Avenue reached the group of riders between Bissell Street and Hathaway Street in Providence.

27. Bissell Street is one street north of Hathaway Street.

28. The protestors, unable and unwilling to march through a line of officers, stopped.

29. As the police line created a potential confrontation, several protesters fell back or moved off to the sidewalks, leaving perhaps twenty protesters in a line across the street.

30. Members of the second group, still physically located in Providence, began taunting the Cranston police blockade and throwing items.

31. Cranston police requested assistance several agencies including again from Providence police. A Providence police sergeant responded to the Cranston police call for assistance and requested that more Providence officers respond.

32. The Cranston police blockade including Defendants Maione, Cragin, Sparks and Shore mobilized and traveled north into Providence. The mobilized blockade marched in formation toward the protestors while some members deployed bursts of pepper spray.

33. Ms. Kurland stepped a few feet into the road and yelling over the noise, asked the two officers closest to her, Defendants Maione and Cragin, why Cranston police were entering the City of Providence. Ms. Kurland also informed the officers that they may have a problem with jurisdiction, as they were now clearly in Providence.

34. Upon seeing Ms. Kurland approach, and without warning, Defendants Maione and Cragin rushed at Ms. Kurland with their arms extended and pointed cans of oleoresin capsicum (O.C.) spray directly in her face, spraying a stream of the substance directly into her mouth, eyes and nose from a distance of roughly one foot.

35. O.C. spray is a chemical weapon that contains the active compound capsaicin. This is derived from chili peppers in a chemical process that dissolves and concentrates it into a liquid. Capsaicin is the same compound that makes chilies hot, but in an intense, weaponized form.

36. O.C. spray is designed to affect a person instantly if not almost instantly. It is an inflammatory substance that attacks the mucous membranes, eyes and respiratory system. O.C. Spray forces the eyes to close and flood with tears. Coupled with coughing fits and difficulty breathing, a person impacted by a direct spray is effectively blinded and incapacitated.

37. Physiological symptoms of O.C. spray include restriction of vision, difficulty breathing, burning skin, nasal irritation, skin swelling, increased blood pressure, burning throat, headache, cough, wheezing, eye swelling, eye burning, gasping, eye inflammation, gagging, tearing eyes, inability to speak, and laryngospasm, a condition in which a person's vocal cords spasm causing temporary blockage of their airway. Psychological symptoms of O.C. spray include anxiety, fear, panic, an inward focus on pain and a sense of helplessness.

38. Ms. Kurland, instantly blinded, reacted by spitting the pepper spray out of her mouth. As she tried to get her bearings and turned to walk away, Defendants Maione and Cragin continued to spray directly at her drenching the back of her head and neck.

39. Ms. Kurland was able to spit the toxic chemical out of her mouth without the discharge making contact with Defendant Maione, Defendant Cragin, or anyone else. Both Defendant Maione and Defendant Cragin continued marching, unaware that Ms. Kurland had spit.

40. Nonetheless, Defendant Shore directed subordinate officers to arrest Ms. Kurland.

41. Defendants Cragin and Sparks then forcibly grabbed Ms. Kurland while she struggled to see and breathe from the pepper spray and dragged her to a Cranston police vehicle parked north of Hathaway Street before Ms. Kurland knew what was going on.

42. Defendants Cragin and Sparks handcuffed her while she was blinded and still choking on pepper spray.

43. Defendants Cragin and Sparks handled Ms. Kurland in a forceful and rough manner, shoving her against the police vehicle hard enough to cause her glasses to be pressed into her face leaving bruising on her eyes before her glasses fell off and onto the ground. Cranston police ignored her request to retrieve her glasses.

44. Later, officers can be heard on video saying, "Good, I'm glad she got locked up" and "I say we sprint at them like we did last night, got me a baton now" and "fuck that felt good, I want some more of that."

45. Ms. Kurland, after being dragged from Providence into Cranston, handcuffed and placed into a police vehicle, was transported to Cranston Police Headquarters.

46. Cranston police pursued a criminal complaint against Ms. Kurland, through its own prosecution division notwithstanding the fact that the entire interaction occurred within Providence.

47. In the four-count criminal complaint, Cranston police alleged Ms. Kurland committed the offenses of disorderly conduct (R.I. Gen. Laws §11-45-1), resisting arrest (R.I. Gen. Laws

§12-1-10) and one count each of simple assault and/or battery concerning Defendants Maione and Cragin (R.I. Gen. Laws §11—5-3).

48. Police made seven other arrests connected to their attempts to disperse people from the area. Each of those seven persons was transported to Providence police headquarters. Each of the seven arrestees was charged by way of a Providence police criminal complaint and prosecuted by the City of Providence.

49. The charges against Mr. Kurland were prosecuted by the City of Cranston.

50. On October 22, 2020, Ms. Kurland was arraigned at Cranston police headquarters by a justice of the peace and released on $1,000.00 personal recognizance with certain restraints on her liberty and a requirement to appear in Third Division District Court at a later date for re-arraignment before a District Court Judge.

51. Ms. Kurland secured private counsel to represent her.

52. On November 19, 2020, Ms. Kurland appeared as required in Third Division District Court for re-arrangement.

53. Upon information and belief, Defendant Winquist communicated to the City's prosecutors that the criminal charges against Ms. Kurland were not to be dismissed.

54. The matter proceeded to a trial. On July 27, 2021, more than nine months after the filing of the complaint, Mr. Kurland was found not guilty of disorderly conduct and resisting arrest.

55. Ms. Kurland, still represented by private counsel, filed an appeal to the Superior Court regarding the two remaining assault allegations.

56. In Rhode Island, an accused person aggrieved by the disposition of the District Court has a constitutional and statutory right to take a *de novo* appeal to the Superior Court. *See State v. Vinagro*, 433 A.2d 945 (R.I. 1981).

57. After nearly another year of pretrial and status conferences, on July 19, 2022, each assault allegation was filed with a plea of not guilty pursuant to RIGL § 12-10-12.

58. By operation of law, each assault allegation was quashed on July 19, 2023. *See* § 12-10-12(c).

59. From October 22, 2020 through July 19, 2022, Ms. Kurland remained under conditions of restricted liberty, unable to leave the state without permission from a judge.

60. At all relevant times, Defendants acted intentionally, willfully, maliciously, and/or with reckless or callous indifference to Ms. Kurland's clearly established constitutional rights.

61. At all relevant times, Defendants knew or should have known that their conduct would cause or contribute to the deprivation of Ms. Kurland's clearly established constitutional rights.

62. As a direct and proximate result of the Defendants' acts and/or omissions, including but not limited to those described herein, Ms. Kurland suffered physical injury and will continue to suffer mental anguish, expenses for legal services, and other great damage.

VI. **Claims for Relief**

**Count One**
***False Arrest in Violation of the Fourth and Fourteenth Amendments,
Actionable Through 42 U.S.C. § 1983***

63. Defendants Shore, Cagin, and Sparks, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, and acting under color of law, acted unreasonably in arresting Ms. Kurland without probable cause, in violation of

the Fourth and Fourteenth Amendments of the United States Constitution, causing Plaintiff to suffer harm as aforesaid.

## Count Two
### *False Arrest in Violation of Art. I, § 6 of the Rhode Island Constitution*

64. Defendants Shore, Cagin and Sparks, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, and acting under color of law, acted unreasonably in arresting Ms. Kurland without probable cause in violation of Article I, §6 of the Rhode Island Constitution, causing Plaintiffs to suffer harm as aforesaid.

## Count Three
### *Excessive Force in Violation of the Fourth and Fourteenth Amendments, Actionable Through 42 U.S.C. § 1983*

65. Defendants Cagin and Maione, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, and acting under color of law, denied Plaintiff her right to be free from the use of excessive force, per the Fourth and Fourteenth Amendments of the United States Constitution, at a minimum, by discharging O.C. spray at Ms. Kurland while she was doing no more than questioning the presence of Cranston police in Providence and thereby causing Ms. Kurland to suffer harm as aforesaid.

66. Defendant Shore was the supervising officer on scene and was within a few feet of Defendants Cagin and Maione when Defendants Cagin and Maione discharged O.C. Spray at Ms. Kurland.

67. Defendant Shore, by his actions and/or omissions, ratified the unlawful conduct of Defendants Cagin and Maione.

68. Defendant Shore had a duty and failed to intervene in the unlawful conduct of Defendants Cagin and Maione.

69. Defendant Sparks had a duty and failed to intervene in the unlawful conduct of Defendants Cagin and Maione.

## Count Four
*Excessive Force in Violation of Art. I, § 6 of the Rhode Island Constitution*

70. Defendants Cagin and Maione, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, denied Ms. Kurland her right to be free from the use of excessive force, per Article I, §6 of the Rhode Island Constitution, at a minimum, by discharging O.C. spray at Ms. Kurland while she was doing no more than questioning the presence of Cranston police in Providence and thereby causing Ms. Kurland to suffer harm as aforesaid.

71. Defendant Shore was the supervising officer on scene and was within a few feet of Defendants Cagin and Maione when Defendants Cagin and Maione discharged O.C. Spray at Ms. Kurland.

72. Defendant Shore, by his actions and/or omissions, ratified the unlawful conduct of Defendants Cagin and Maione.

73. Defendant Shore had a duty and failed to intervene in the unlawful conduct of Defendants Cagin and Maione.

74. Defendant Sparks had a duty and failed to intervene in the unlawful conduct of Defendants Cagin and Maione.

## Count Five
**Excessive Force in Violation of the Fourth and Fourteenth Amendments, Actionable Through 42 U.S.C. § 1983**

75. Defendants Cagin and Sparks, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, and acting under color of law, denied Plaintiff her right to be free from the use of excessive force, per the Fourth and Fourteenth

Amendments of the United States Constitution, at a minimum, by using more force than was reasonably necessary to take Ms. Kurland into custody and thereby causing Ms. Kurland to suffer harm as aforesaid.

76. Defendant Shore directed Defendants Cagin and Sparks to take Ms. Kurland into custody.

77. Defendant Shore, by his actions and/or omissions, ratified the unlawful conduct of Defendants Cagin and Sparks.

78. Defendant Shore had a duty and failed to intervene in the unlawful conduct of Defendants Cagin and Sparks.

79. Defendant Maione had a duty and failed to intervene in the unlawful conduct of Defendants Cagin and Sparks.

**Count Six**
*Excessive Force in Violation of Art. I, § 6 of the Rhode Island Constitution*

80. Defendants Cagin and Sparks, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, and acting under color of law, denied Plaintiff her right to be free from the use of excessive force, per Article I, §6 of the Rhode Island Constitution, at a minimum, by using more force than was reasonably necessary to take Ms. Kurland into custody and thereby causing Ms. Kurland to suffer harm as aforesaid.

81. Defendant Shore directed Defendants Cagin and Sparks to take Ms. Kurland into custody.

82. Defendant Shore, by his actions and/or omissions, ratified the unlawful conduct of Defendants Cagin and Sparks.

83. Defendant Shore had a duty and failed to intervene in the unlawful conduct of Defendants Cagin and Sparks.

84. Defendant Maione had a duty and failed to intervene in the unlawful conduct of Defendants Cagin and Sparks.

## Count Seven
*Official Policy and Failure to Train, Discipline, and Supervise,*
*Actionable Through 42 U.S.C. § 1983*

85. Defendant City and Defendant Winquist, through their policymaking, had in force and effect at the time of the conduct complained of in this Complaint, a policy, practice or custom of using excessive force against arrestees in violation of the Fourth Amendment.

86. Defendant City and Defendant Winquist failed to ensure through custom, policy, and/or practice the remaining defendant officers would not use excessive force.

87. Defendant City and Defendant Winquist failed to ensure through custom, policy, and/or practice the remaining defendant officers would not permit the use of excessive force through a failure to intervene.

88. Defendant City and Defendant Winquist had actual or constructive notice of such failures to train, supervise and provide policies to its employees though it was foreseeable that officers would use excessive force depriving persons, including Ms. Kurland, of her constitutional right to be free from excessive force.

89. Defendant City and Defendant Winquist had actual or constructive notice of such failures to train, supervise and provide policies to its employees though it was foreseeable that officers would permit the use of excessive force through their failure to intervene, thereby depriving persons, including Ms. Kurland, of her constitutional right to be free from excessive force.

90. Defendant City and Defendant Winquist failed to adequately supervise, train or discipline their employees, though it was foreseeable that constitutional violations and harm of the type to Ms. Kurland would be a likely result of such failures.

91. Such failure to train, screen, supervise, and discipline and such unconstitutional municipal customs, practices and/or policies amounted to gross negligence, deliberate indifference, or intentional misconduct which directly and proximately caused the suffering, damages, injuries previously set forth herein.

92. As a direct and proximate result of the foregoing policies, failures, practices, or customs, Defendant Officers used excessive force on Ms. Kurland thereby causing Ms. Kurland to suffer harm as aforesaid.

### Count Eight
*Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments, Actionable Through 42 U.S.C. § 1983*

93. Defendants, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, and acting under color of law, acted unreasonably in prosecuting Ms. Kurland without probable cause, in violation of the Fourth and Fourteenth Amendments of the United States Constitution, causing Ms. Kurland to suffer harm as aforesaid.

### Count Nine
*Malicious Prosecution in Violation of Article 1, §§2, 6 and 7 of the Rhode Island Constitution*

94. Defendants, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have caused criminal charges to be brought and prosecuted against Ms. Kurland, without probable cause and with malice, which were terminated in favor of the Ms. Kurland, causing Ms. Kurland to suffer harm as aforesaid, and have thereby deprived Ms. Kurland of her rights secured under Article 1, §§ 2, and 6 of the Rhode Island Constitution, directly actionable in accordance with *Jones v. State of Rhode Island*, 724 F. Supp. 25 (D.R.I. 1989).

### Count Ten
### *Common Law Negligence*

95. Defendants Maione, Cragin, Sparks and Shore, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, failed and/or refused to exercise reasonable care to protect Ms. Kurland from reasonably foreseeable harm, causing Ms. Kurland to suffer harm as aforesaid.

### Count Eleven
### *Common Law Assault*

96. Defendants Maione, Cragin, Sparks and Shore, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, placed Ms. Kurland in reasonable fear of imminent bodily harm, causing Kurland to suffer harm as aforesaid.

### Count Twelve
### *Common Law Battery*

97. Defendants Maione, Cragin, Sparks and Shore, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, caused unwanted touching of Ms. Kurland, causing Ms. Kurland to suffer harm as aforesaid.

### Count Thirteen
### *Common Law False Arrest / False Imprisonment*

98. Defendants Maione, Cragin, Sparks and Shore, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, caused Ms. Kurland to held against her will without legal justification.

### Count Fourteen
### *Common Law Malicious Prosecution*

99. Defendants, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, acting under color of law, acted unreasonably in

prosecuting Ms. Kurland without probable cause, causing Ms. Kurland to suffer harm as aforesaid.

### VII. **Prayers for Relief**

WHEREFORE, Ms. Kurland hereby prays that this Court grant the following relief:

1. A declaratory judgment in favor of Ms. Kurland, against the Defendants;

2. An award of compensatory damages;

3. An award of punitive damages as allowed by law;

4. An award of pre- and post-judgment interest on all sums recovered, and an award of reasonable attorney's fees, expenses and costs of litigation to Plaintiff pursuant to 42 U.S.C. § 1988 and/or R.I. Gen. Laws § 31-21.2-4; and

5. Such other and further relief as this Court deems just and proper.

### VIII. **Demand for Jury Trial**

Ms. Kurland hereby demands a trial by jury on all counts so triable.

### IX. **Designation of Trial Counsel**

Ms. Kurland hereby designates Attorney J. Dixon-Acosta, as trial counsel.

Plaintiff,
SHANNAH M. KURLAND,
By and through Counsel,

DATED:  October 20, 2023

/s/ J. Dixon-Acosta, Esq. (#8692)
899 Warren Avenue, Suite 2
East Providence, RI  02914
P:  (401) 584-4404
F:  (401) 234-1367
jadaesq@gmail.com

16